UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MOHAMED
SALAMI,

              Plaintiff,

v.

UNITED STATES
DEPARTMENT OF STATE,

              Defendants.

_____/

Case No. 2:23-cv-12742
District Judge Sean F. Cox
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO REVOKE IFP STATUS, DISMISS THE CASE, AND DENY ALL PENDING MOTIONS AS MOOT (ECF NOS. 6 & 10)

I.  **RECOMMENDATION**:

The Court should **REVOKE** Plaintiff Michael Salami's IFP status,

**DISMISS** the case, and **DENY** all pending motions (ECF No. 6 & 10) as moot.

II.  **BACKGROUND**

Plaintiff Michael Mohamed Salmi filed the instant lawsuit *in pro per* on

October 27, 2023, against the United States Department of State and the National

Passport Information Center.  (ECF No. 1.)  Plaintiff also filed an application to

proceed without prepaying fees or costs.  (ECF No. 2)  Chief Judge Sean F. Cox

referred this case to me on November 21, 2023 "for all pretrial proceedings,

including a hearing and determination of all non–dispositive matters pursuant to 28

U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive

matters pursuant to 28 U.S.C. § 636(b)(1)(B)."  (ECF No. 5.)

Plaintiff's initial pleading was labeled a "Petition for Writ of Mandamus"

and sought enforcement of a request he made under the Freedom of Information

Act for a copy of his passport application records.  (ECF No. 1, PageID.1-2.)

Because his application to proceed without prepayment of fees was supported by

the requisite showing of indigency with his prisoner account activity, and because

the petition seeking enforcement of a relatively straight-forward FOIA request

appeared nonfrivolous on its face, the Court granted the application to proceed

without prepayment of fees.  (ECF No. 7.)  Plaintiff was ordered to complete

service documents for service of process.  (ECF No. 8.)

Plaintiff also filed a motion for the Court to order the parties to engage in a

mediation process to resolve the substantive complaints in his petition.  (ECF No.

6, PageID.15.)  Specifically, Plaintiff stated that he would terminate any request

for monetary relief or a jury trial (to the extent he was entitled to either) if

Defendant would officially release his passport records.  (ECF No. 6, PageID.15.)

On March 9, 2024, Plaintiff filed a motion to amend the complaint (ECF No.

10) and an Amended Complaint (ECF No. 9).  In his motion to amend, Plaintiff

states that the "current complaint has been reasonably resolved through mediation"

but that he has "a new complaint that has a larger and more urgent redress claims that supercede (sic) the complaint (initial) which would be cost effective to Plaintiff, stop another filing, case congestion and filing-fee."  (ECF No. 10, PageID.33.)

His amended complaint (ECF No. 9) asserts new claims, against a new defendant, without any connection whatsoever to his initial FOIA-related litigation. Specifically, Plaintiff now seeks to sue the "Democratic People's Republic of Korea aka North Korea."  He claims that on June 30, 2021, Plaintiff broke parole and illegally entered Mexico with either an expired US Passport, an expired Romania Passport, or both.  (*Id.*, PageID.29.)  Plaintiff alleges he then "proceded [sic] to take transportation of a Mexican-Coyote group for $1,500-USD to Mexico." (*Id.*)  Somehow, apparently after "paying a Chinese diplomat," Plaintiff attempted to travel to North Korea.  (ECF No. 9, PageID.29-30.)  While going through security, North Korean officials discovered Plaintiff to be carrying multiple passports, "several grams of weed," "blunts," and a ".380 pistol on Plaintiff's ankle-style holster."  (ECF No. 9, PageID.30.)

Plaintiff claims he was then taken to a dark room, somewhere in the North Korean Embassy, where he was stripped naked, tortured, forced to watch "torture videos and assassination videos on an iPad," and called "spy," "American Bastard," and "Imperialist-dog."  (*Id*., PageID.30.)

After further torture, Plaintiff claims he was injected with a muscle relaxant, passed out, and woke up in the trunk of a Mercedes. (*Id.*) He was pulled out of the trunk, handcuffed and blindfolded, and forced to "beg like a dog" at gunpoint. The security agents allegedly performed mock executions, then placed a rag in his mouth until Plaintiff passed out again. (*Id.*) When he woke this time, he was alone outside of Mexico City. He then sought relief from a police station, and finding none, he went to a Catholic Church where he booked a flight to Tijuana using a stolen Mexican ID. (*Id.*) Plaintiff attempted to seek refuge from the French Consulate, but was refused. He then "had a money transfer of $1,000 USD sent to his stolen mexican [sic] ID Card[,]" but was "robbed by a street-gang at knife point." (*Id.*) Unable to catch a break, Plaintiff was then arrested by Mexican Law Enforcement for "drug possession (cocaine) and suspected robbery," but was never prosecuted. (*Id.*) Plaintiff was then extradited to the United States, where he was apparently arrested on separate charges.

Two years later he initiated this case, *under the Freedom of Information Act*.

## III.   DISCUSSION

### A. Three Strikes Dismissal

The Prisoner Litigation Reform Act of 1995 states that "if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). However, the PLRA

permits prisoners to pay the filing fee in installments. See 28 U.S.C. § 1915(b).  To prevent prisoners from abusing this system, the PLRA does not allow a prisoner to commence a civil action in forma pauperis if on three or more previous occasions a federal court has dismissed an earlier complaint filed by the prisoner on grounds that the complaint was frivolous, malicious, or failed to state a claim for which relief may be granted. See 28 U.S.C. § 1915(g); *Thaddeus-X v. Blatter*, 175 F. 3d 378, 400 (6th Cir. 1999).  Under this three strikes rule, serial prisoner litigants may not proceed *in forma pauperis* absent an allegation that the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Although Plaintiff's application to proceed *in forma pauperis* was granted, the Court was not initially aware that he had "three strikes" from previous litigations, and thus his application should have been denied.  Plaintiff is fully aware that he has a three strikes and the limit that places on his ability to obtain *in forma pauperis* status.  In a case filed in August 2023, just two months prior to this case, Plaintiff brought a *pro se* complaint and simultaneously filed a "Motion for waiver of filing fee/Notice of Three Striker PLRA" in which he asked for a waiver of the "three strikes rule" so that he could file a complaint without prepayment of filing fees.  (Case No. 23-12213, ECF No. 2.)  Judge Judith Levy denied the request.  (Case No. 23-12213, ECF No. 5.)  Specifically, Judge Levy noted that she had "independently confirmed that Salami is subject to the three strikes rule."

(Case No. 23-12213, ECF No. 5, PageID.14, citing *Salami v. Girard*, No. 19-cv-11918, 2019 WL 3343001, at *2 (E.D. Mich. July 25, 2019) (denying leave to proceed in forma pauperis and dismissing without prejudice under § 1915(g) a different complaint filed by Salami because "[t]hree of [his] previous complaints have been summarily dismissed for failure to state a claim" and the imminent danger exception was not satisfied (citing *Salami v. Winn*, et al., No. 19-cv-11568 (E.D. Mich. May 31, 2019*); Salami v. Michigan State Police Forensic Science Laboratory, et al.,* No. 19-cv-10215 (E.D. Mich. Feb. 1, 2019); *Salami v. Michigan State Police Forensic Science Laboratory*, et al., No. 18-cv-13282 (E.D. Mich. Feb. 5, 2019)))).

Here, now that the Court has discovered that Plaintiff has three prior strikes, the Court should dismiss his complaint unless it contains allegations that he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Whether analyzing his initial complaint under the Freedom of Information Act, or his amended complaint asserting torture that occurred two years ago in another jurisdiction, Plaintiff alleges no threat of imminent danger of serious injury. As such, he is not entitled to IFP status, and his case should be dismissed. *See Peoples v. Doolan*, 23 F. App'x 388 (6th Cir. 2001) (affirming dismissal of complaint after IFP status was revoked upon discovering the plaintiff was a three-striker).

Accordingly, the Court should **REVOKE** Plaintiff Michael Salami's IFP status, **DISMISS** the case, and **DENY** all pending motions (ECF No. 6 & 10) as moot.

## B. (Alternatively) Improper Joinder Dismissal

Alternatively, even if the Court were inclined grant *in forma pauperis* status, the amended complaint which asserts entirely new claims against an entirely new Defendant would be subject to dismissal (and, therefore, not survive a motion to dismiss) for various reasons, including most prominently improper joinder under Fed. R. Civ. P. 19. Plaintiff brazenly admits he is attempting to amend a now-resolved complaint in order avoid paying the filing fee associated with bringing a new case. (ECF No. 10, PageID.33 (*i.e.*, "which would be more cost effective to Plaintiff").) This is not a proper basis on which to amend a complaint, even one that is amended under Fed. R. Civ. P. 15(a)(1) as a matter of course. Plaintiff does not in fact seek to *amend* a complaint but to *supplant* his original litigation (*i.e.*, a mandamus petition) with a wholly unrelated litigation, switching the defendants from the "United States Department of State and the National Passport Office" to the radically unrelated "Democratic Peoples Republic of Korea aka North Korea." The original claims having being resolved, there is no basis for permitting this litigation to move forward in the form proposed, irrespective of three-strike or *in forma pauperis* status.

7

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: March 25, 2024

ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE